ELECTRONICALLY FILED
Sep 26 2025
U.S. DISTRICT COURT
Northern District of WV

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG DIVISION**

**JUSTIN DAVIS and KENDRA DAVIS,**

**Plaintiffs,**

**v.**

**EQT CORPORATION,**

**Defendant.**

**Civil Action No. 1:25-CV-99 (Kleeh)**

**(Removal from Marion County Circuit Court, Civil Action No. 25-C-155)**

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant EQT Corporation ("EQT") files this Notice of Removal, removing Civil Action Case No. CC-24-2025-C-155 from the Circuit Court of Marion County, West Virginia to the United States District Court for the Northern District of West Virginia, Clarksburg Division. In support thereof, EQT states as follows:

***Statement of Removal***

1. On August 21, 2025, Plaintiffs Justin Davis and Kendra Davis commenced an action against EQT by filing a Complaint in the Circuit Court of Marion County, West Virginia, indexed at Case No. CC-24-2025-C-155.

2. Pursuant to 28 U.S.C. § 1446(a), attached hereto as **Exhibit 1** is a copy of the Marion County, West Virginia docket for this matter and a true and correct copy of the Complaint and all process, pleadings and orders served on EQT.

3. EQT received service of the Complaint on August 28, 2025.

4. EQT has not filed a responsive pleading in the Circuit Court of Marion County, West Virginia.

5. Pursuant to 28 U.S.C. § 1441(a), removal of an action originally filed in state court

is proper for "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" *See* 28 U.S.C. § 1441(a).

6. 28 U.S.C. § 1332(a), in turn, provides that the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of different States." *See* 28 U.S.C. § 1332(a).

7. As set forth below, because this case arises between completely diverse parties, and because the amount in controversy in this case exceeds $75,000 in value, exclusive of interest and costs, this case falls within the original subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 1332(a), making removal proper. *See* 28 U.S.C. §§ 1332(a), 1441(a).

***Background***

8. Plaintiffs allege that they "own and reside" with their children at their "family home" in Mannington, West Virginia, which they characterize as a "historic residence over 120 years old." *See* Ex. 1, Compl. ¶ 4.

9. Plaintiffs allege that, in 2022, EQT constructed an "industrial staging area" near Plaintiffs' home to "support [EQT's] oil and gas exploration activities." *See id*. ¶ 5.

10. Plaintiffs allege that, beginning in or around June of 2024, EQT's oil and gas operations around Plaintiffs' property "sudden[ly] and dramatic[ally] increase[d]," exposing Plaintiffs to "continuous heavy equipment traffic, loud noises, bright lights, environmental pollution, reckless driving by [EQT] employees and contractors, and improper alterations and damage [] to infrastructure situated on Plaintiffs' property." *See id*. ¶¶ 6-7.

11. Plaintiffs specifically allege that "bright lights" from EQT's operations "shine into the Plaintiffs' home at all hours of the night causing severe sleep disruption and resulting in

significant personal harm to the Plaintiffs and their children," while "loud machinery and/or generators" from EQT's operations similarly produce "constant and continuous noise when in use" during various hours of the day. *See id.* ¶¶ 8-9.

12. Plaintiffs further allege that EQT's operations have "caused damage[] and/or irreparable harm to the Plaintiffs' property, including but not limited to, severe erosion, destruction of landscaping, trees, historic sandstone barriers, vehicle damage, real and personal property, and contamination risks to Plaintiffs' water source." *See id.* ¶ 10.

13. Plaintiffs attempt to summarize these various purported harms by alleging that EQT's operations have "substantially disrupted Plaintiffs' peaceful use and enjoyment of their property, caused extensive property damage, environmental damages and pollution, diminished value to their home, created safety risks to their family's and guests' health and safety, emotional distress, and economic harm." *See id.* ¶ 11.

14. Plaintiffs proceed to assert a number of tort claims against EQT under West Virginia law, including private nuisance, trespass, negligence and negligent infliction of emotional distress. *See id.* at Counts I-IV.

15. On the basis of these claims, Plaintiffs seek unspecified "compensatory and punitive damages" against EQT. *See id.* ¶ 13 & Prayer for Relief, Subsection (a). Though unspecified, Plaintiffs predicate these purported damages on a range of allegedly "significant economic and non-economic" harms. *See id.* ¶ 26.[1]

[1] In addition to the generalized harms referenced earlier, *see id.* ¶ 11, Plaintiffs assert more discrete harms throughout their Complaint, including but not limited to: (i) "property damage to physical structures, fencing, trees and landscaping"; (ii) "damage to vehicles"; (iii) "property repair costs"; (iv) "visible chemical and oil runoff contamination [] posing severe and irreparable risks to Plaintiffs' drinking water sourced from their residential well"; (v) "dangerous conditions for walking"; (vi) "health risks"; (vii) "disruption of family and community events"; (viii) "emotional distress and sleep disruption"; (ix) "diminished quality of life for Plaintiffs and their children"; and (x) "severe emotional and psychological harm to Plaintiffs and their children." *See id.* ¶¶ 18, 26, 28, 30, 34.

16. Because some of these alleged harms, according to Plaintiffs, "cannot be adequately compensated by money damages alone," Plaintiffs also request equitable relief in the form of a "permanent injunction and order of abatement" that would seemingly require EQT to, among other things: (i) physically move its industrial staging area away from Plaintiffs' home; (ii) "cease or modify its operations to eliminate" Plaintiffs' complained of conditions; (iii) remediate Plaintiffs' "damaged property and landscaping"; (iv) "implement appropriate safety and environmental controls," including "dust and runoff control measures"; and (v) undertake "full remediation and preventative measures to protect [Plaintiffs'] property and health from ongoing contamination[] risks." *See id*. at Counts V-VI & Prayer for Relief, Subsection (b).[2]

***Diversity of Citizenship***

17. For removal jurisdiction to lie under 28 U.S.C. § 1332(a), the parties in the state court action must first be sufficiently diverse. *See* 28 U.S.C. § 1332(a). Based upon Plaintiffs' Complaint and the information available to EQT, there is complete diversity between Plaintiffs and EQT here.

18. According to the Complaint, Plaintiffs own and reside with their children "at their family home" in Mannington, Marion County, West Virginia, where Plaintiffs have resided "at all pertinent times[.]" *See* Ex. 1, Compl. ¶¶ 1, 4. As such, Plaintiffs are domiciled in West Virginia and are thus citizens of West Virginia for diversity purposes. *See Johnson v. Advance Am.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008) ("Domicile requires physical presence, coupled with an intent to make the State a home."); *see also Bloom v. Library Corp.*, 112 F.Supp.3d 498, 502 (N.D.W. Va. 2015) (for diversity purposes, "[a]n individual is a citizen of the state in which he or she is

---

[2] Plaintiffs style their request for equitable/injunctive relief as standalone causes of action. *See id*. at Counts V ("Environmental Contamination and Health Risk"), VI ("Injunctive Relief and Abatement"). EQT does not concede the legitimacy and/or viability of any causes of action in Plaintiffs' Complaint and relies upon the "Counts" set forth therein for reference purposes only.

domiciled.”).

19. EQT is a Pennsylvania corporation with a principal office in Pittsburgh, Pennsylvania. *See* **Exhibit 2**. EQT is accordingly a citizen of Pennsylvania for diversity purposes. *See Bloom*, 112 F.Supp.3d at 502 (“For federal diversity jurisdiction purposes, a corporation is a citizen of the states in which it has been incorporated and in which it has its principal place of business.”) (internal quotation marks omitted).

20. Based on the foregoing, there is complete diversity of citizenship between Plaintiffs and Defendant EQT, satisfying the first jurisdictional prerequisite for this Court’s original jurisdiction over this case. *See* 28 U.S.C. § 1332(a).

***Amount in Controversy***

21. For removal jurisdiction to lie under 28 U.S.C. § 1332(a), the amount in controversy in the state court action must also exceed the requisite $75,000 jurisdictional threshold. *See id*. That threshold is met here.

22. Plaintiffs’ Complaint does not state the amount in controversy in this matter. *See generally* Ex. 1, Compl. “When the plaintiff’s complaint does not state the amount in controversy, the defendant’s notice of removal may do so.” *See Dart Cherokee Basin Op. Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). This requires “only a plausible” assertion by the defendant that the amount in controversy exceeds the $75,000 jurisdictional threshold, and “when not contested by the plaintiff or questioned by the court,” this assertion “should be accepted,” without the need for any “evidentiary submissions” by the defendant. *See id*. at 84, 87-89.

23. Only where the defendant’s amount in controversy assertion is challenged or questioned must the defendant demonstrate by a preponderance of the evidence that it is “more likely than not that the amount-in-controversy requirement is met.” *See Caprita v. Estate of Zilko*,

No. 5:16-CV-170, 2017 WL 1407646, at *2 (N.D.W. Va. Apr. 19, 2017); *see also Michael v. McElroy Coal Co.*, No. 5:13-CV-95, 2013 WL 12137307, at *1 (N.D.W. Va. Sept. 12, 2013). In determining whether the defendant has made this showing, the Court may consider the claims and allegations of, and the relief requested by, the complaint. *See Caprita*, 2017 WL 1407646, at *2; *see also Freeport Gas Coal Trust v. Harrison Cnty. Coal Res., Inc.*, 662 F.Supp.3d 594, 600 (N.D.W. Va. 2023). Ultimately, the "key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but an estimate of the amount that will be put at issue in the course of the litigation." *See Scott v. Crickett Comms., LLC*, 865 F.3d 189, 196 (4th Cir. 2017) (internal quotation marks omitted). In conducting that inquiry, this Court is "not required to leave common sense behind." *See Caprita*, 2017 WL 1407646, at *2 (internal quotation marks omitted); *see also Scott*, 865 F.3d at 196 ("In many removal cases, a defendant's allegations rely on some extent to reasonable estimates, inferences, and deductions."). Here, Plaintiffs' Complaint is all that the Court needs to reasonably conclude that more than $75,000 will be put at issue in this action.

24. To begin, Plaintiffs claim that EQT's oil and gas operations near their home have caused "significant personal harm" to Plaintiffs and their children on a variety of grounds, from "sleep disruption" and "health risks" to "emotional distress" and "economic loss[]." *See* Ex. 1, Compl. ¶¶ 8, 11, 18, 26, 28, 32, 34. It is more than plausible to believe that Plaintiffs' pursuit of compensatory damages for these alleged harms, alone, would put over $75,000 in controversy in this matter. *See Kreitzer v. Safeco Ins. Co. of Am.*, No. 5:22-CV-312, 2023 WL 11115140, at *3 (N.D.W. Va. Jan. 23, 2023) (finding that jurisdictional limit was exceeded and denying motion to remand where, "[a]lthough plaintiff [did] not specify an amount in the Complaint," she claimed "ongoing medical conditions and increased risk of other conditions" and sought compensatory

damages for a "variety of other" alleged personal harms, including "severe emotional distress, mental anguish, inconvenience, annoyance, embarrassment [and] economic losses[.]").

25. Notwithstanding this, Plaintiffs separately allege that the EQT oil and gas operations at issue have also caused "severe" and widespread damage (and even "contamination") to their property, including their purportedly "historic," 120-year-old-plus residence. *See* Ex. 1, Compl. ¶¶ 4, 10-11, 18, 21, 24, 26, 30, 32, 34. This allegedly extensive property damage, Plaintiffs claim, has not just "diminished [the] value of their home" and contributed to other property-related "economic losses," but has also led Plaintiffs to incur "repair costs." *See id*. ¶¶ 11, 18, 26, 34. Plaintiffs' pursuit of compensatory damages for these allegedly separate and independent property harms is equally likely to put more than $75,000 at issue in this case. *See Michael*, 2013 WL 12137307, at *1-2 (denying motion to remand and finding that jurisdictional limit was exceeded where, although plaintiffs' complaint similarly did not "contain a demand for a specific monetary award," plaintiffs alleged that defendants' mining activities caused "substantial" damage to their "custom built" residence, permanently reducing its value, as well as subsidence issues, damage to their property's terrain and environmental damage to the pond, springs and wells on their property).

26. Moreover, in asserting various tort claims against EQT, Plaintiffs also seek punitive damages under West Virginia law. *See* Ex. 1, Compl. ¶ 13 & Prayer for Relief, Subsection (a); *see also Jersey Subs, Inc. v. Sodexo Am., LLC*, No. 1:18-CV-191, 2019 WL 208882, at *3 (N.D.W. Va. Jan. 15, 2019) (it is "well-established" that courts may consider a plaintiff's claim for punitive damages in their calculation of the amount in controversy, as a claim for punitive damages "may augment compensatory damages in determining the amount in controversy unless it can be said to a legal certainty that plaintiff cannot recover punitive damages in the action.") (internal quotation marks omitted). Relevant here, West Virginia law allows for punitive damages as long as they do

not "exceed the greater of four times the amount of compensatory damages or $500,000, whichever is greater." *See* W. Va. Code § 55-7-29. As a result, Plaintiffs could potentially claim up to $500,000 in punitive damages in this action, again placing the amount in controversy well above the $75,000 threshold. And even if Plaintiffs cannot claim the maximum statutory amount of punitive damages, they would only need to recover $15,000 in compensatory damages for the various alleged personal and property harms discussed above to be eligible for punitive damages in excess of the $75,000 threshold. Plaintiffs' request for punitive damages in their Complaint accordingly reinforces EQT's plausible assertion that the amount in controversy in this case exceeds the jurisdictional limit. *See Jersey Subs*, 2019 WL 208882, at *3 (considering plaintiffs' demand for punitive damages in connection with their tort claims under West Virginia law and explaining mechanics of W. Va. Code § 55-7-29 before finding that jurisdictional limit had been satisfied and denying motion for remand).

27. Finally, Plaintiffs do not just seek monetary damages in their Complaint—they also seek extraordinary equitable relief against EQT, including a "permanent injunction and order of abatement." *See* Ex. 1, Compl. at Counts V-VI & Prayer for Relief, Subsection (b). Where, as here, a plaintiff seeks injunctive relief, the amount in controversy can also be "measured by the value of the object of the litigation." *See Freeport*, 662 F.Supp.3d at 600 (quoting, in part, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 346 (1977)). "This is measured by the pecuniary result to ***either*** party which [a] judgment would produce." *See Freeport*, 662 F.Supp.3d at 600 (internal quotation marks omitted, emphasis added). According to Plaintiffs, the "object of the litigation" here is Plaintiffs' claimed right to protect themselves and their property against alleged harms from EQT's nearby operations, particularly at the "staging area" close to Plaintiffs' residence. *See generally* Ex. 1, Compl. Plaintiffs consequently request injunctive relief that would

first require EQT to either fundamentally overhaul its operations in the area or stop them entirely. *See id*. at Prayer for Relief, Subsection (b) (requesting that EQT be directed to physically "move" its industrial staging area away from Plaintiffs' property and "cease or modify its operations to eliminate" the issues Plaintiffs are allegedly experiencing). EQT respectfully submits that being ordered to modify its complex oil and gas operations in the area (or to cease them outright) would almost certainly cost EQT well over $75,000. *See Freeport*, 662 F.Supp.3d at 601 (explaining that courts in this circuit have found that amount in controversy can be satisfied where "injunctive relief would require the defendant to alter his method of doing business in such a manner that would cost at least the statutory minimum.") (quoting *McCoy v. Erie Ins. Co.*, 147 F.Supp.2d 481, 492 (S.D.W. Va. 2001)). Plaintiffs further ask as part of their requested permanent injunction that EQT "implement appropriate safety and environmental controls" and other "preventive measures" while also undertaking "full remediation" of Plaintiffs' allegedly contaminated property. *See* Ex. 1, Compl. at Counts V-VI & Prayer for Relief, Subsection (b). It is similarly reasonable to conclude that these measures, if imposed, would cost EQT over $75,000. *See Freeport*, 662 F.Supp.3d at 600-601 (jurisdictional limit satisfied where plaintiff's requested equitable relief would require defendant mining company to undertake various activities that, taken individually or collectively, would "easily" cost more than $75,000).

28. In sum, even though no amount in controversy is stated in Plaintiffs' Complaint, a fair reading of that Complaint makes clear that the amount in controversy in this matter will "more likely than not" exceed the $75,000 jurisdictional threshold, for multiple independent reasons.

***Removal Procedure***

29. With both jurisdictional prerequisites satisfied, this Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), making removal of this case proper. *See* 28 U.S.C.

§§ 1332(a), 1441(a).

30. Removal of the above-captioned matter is timely under 28 U.S.C. § 1446(b), because this Notice of Removal has been filed within thirty (30) days of receipt of the Complaint by EQT. *See* 28 U.S.C. § 1446(b).

31. Removal is properly made to the United States District Court for the Northern District of West Virginia, Clarskburg Division because Marion County, West Virginia, where this action is pending, is within the Northern District of West Virginia, Clarksburg Division. *See* 28 U.S.C. § 1441(a).

32. EQT will file written notice of the filing of this Notice of Removal with the Clerk of the Circuit Court of Marion County, West Virginia concurrently with the filing of this Notice of Removal and will serve the same upon Plaintiffs pursuant to 28 U.S.C. § 1446(d). *See* 28 U.S.C. § 1446(d).

33. In filing this Notice of Removal, EQT does not waive any available defenses it may assert in this action.

**WHEREFORE**, by this Notice of Removal, Defendant EQT Corporation removes this action from the Circuit Court of Marion County, West Virginia and requests that this action proceed as properly removed to this Court.

**EQT CORPORATION,**

By Counsel,

*/s/ Jennifer J. Hicks*

Jennifer J. Hicks, Esquire (WVSB #11423)
Babst, Calland, Clements & Zomnir, P.C.
300 Summers Street, Suite 1000
Charleston, WV 25301
681-205-8888
681-205-8814 (fax)

jhicks@babstcalland.com

and

Mark K. Dausch, Esquire (WVSB #11655)
Babst, Calland, Clements & Zomnir, P.C.
603 Stanwix Street, 6th Floor
Pittsburgh, PA 15222
412-394-5400
412-394-6576 (fax)
mdausch@babstcalland.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG DIVISION**

**JUSTIN DAVIS and KENDRA DAVIS,**

**Plaintiffs,**

**v.**

**EQT CORPORATION,**

**Defendant.**

**Civil Action No.** 1:25-CV-99

**(Removal from Marion County Circuit Court, Civil Action No. 25-C-155)**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing ***Notice of Removal*** was electronically filed September 26, 2025, via the Court's CM/ECF system, which will send a notice of electronic filing, and that I served the same by electronic mail and by first-class mail, postage prepaid to the following:

Andrew G. Meek, Esq.
HAMSTEAD, WILLIAMS & MEEK PLLC
68 Clay Street, Suite C
Morgantown, WV 26501
andrew@wvalaw.com
*Counsel for Plaintiff*

*/s/ Jennifer J. Hicks*
Jennifer J. Hicks, Esquire (WVSB #11423)